Gabriele SPENA, Plaintiff,

v.

Margaret M. HECKLER, Secretary, Department of Health and Human Services, Defendant.

No. 83 CIV 5725 (LBS).

United States District Court, S.D. New York.

May 16, 1984.

Israel, Adler, Ronca & Gucciardo, New York City, for plaintiff; Angelo C. Gucciardo, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Nancy Kilson, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SAND, District Judge.

Gabriele Spena brings this action to review a final determination of the Secretary

of Health and Human Services ("the Secretary") that plaintiff is not disabled for purposes of the Social Security Act ("the Act") and therefore not entitled to disability insurance benefits and Supplemental Security Income. Defendant has moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). For the following reasons, we deny defendant's motion and remand the case to the Secretary.

## FACTS

Gabriele Spena is 48 years old. He was born in Italy in 1936 where he completed four years of schooling before coming to the United States in 1962. He has had no schooling in the United States and is unable to communicate in English. An interpreter was used at the administrative hearing.

Plaintiff was trained in Italy as a mechanic's helper in an iron works and continued performing this work after arriving in the United States. On December 28, 1979, while at work, plaintiff slipped and fell off iron pipes lying on the floor and injured his lower back. He has not worked since that date. At his hearing, plaintiff testified that he experiences constant pain in his lower back and left leg as a result of this accident, visits a doctor monthly, takes medication and walks with a cane.

Plaintiff was examined by Dr. Anthony N. Soscia on behalf of the Workmen's Compensation Board on January 15, 1980 and February 1, 1980. Dr. Soscia's diagnosis was lumbar sacral sprain with moderate muscle spasm and restricted spine motion. Although Dr. Soscia's initial report states that the duration of the disability would probably be three to four weeks, the second report does not mention any such limit to plaintiff's disability.

Plaintiff was examined by Dr. Robert Zaretsky on July 24, 1980 and, according to plaintiff's testimony and Dr. Zaretsky's reports, plaintiff has been treated by Dr. Zaretsky on a monthly basis since that date. Dr. Zaretsky noted a moderate degree of paravertebral muscular tautness with local tenderness, flexion of 55°, lateral bend of 20°, and no atrophy. In the final report, dated October 13, 1982, Dr. Zaretsky noted persistent muscle spasm, defects in trunk mobility, straight leg raising positive on the left side, and lateral bend reduced to 15°. Dr. Zaretsky stated that plaintiff is not capable of gainful employment.

Plaintiff was examined by another Workmen's Compensation Board doctor, Dr. deNarvaez, on June 24, 1981 and April 27, 1982. On both occasions, Dr. deNarvaez reported that forward flexion of the trunk as well as sitting and supine straight leg raising are restricted and elicit pain in the lower back. Dr. deNarvaez's final diagnosis was permanent partial disability.

Plaintiff was also examined by Dr. M. Patel, a consulting physician to the disability determination service, on June 11, 1982. Dr. Patel's diagnosis was scoliosis of the spine and chronic low back syndrome with status post trauma. On November 6, 1982, Dr. Kovary, a non-examining physician of the disability determination service, completed a residual functional capacity assessment of plaintiff. Dr. Kovary found that plaintiff could lift twenty pounds and frequently lift up to ten pounds. Dr. Kovary made no evaluation of plaintiff's ability to sit, stand, walk or complete push/pull activities but he concluded that plaintiff could perform light work.

Plaintiff testified that he has trouble standing for very long, can walk 1½ blocks without a rest, and can sit for twenty minutes.

Plaintiff filed his application for disability insurance benefits on May 4, 1982, claiming a disability onset date of July 1981 which was later amended to December 28, 1979. Plaintiff's application was denied and a hearing was held before an ALJ on February 22, 1983. The ALJ ruled that plaintiff has a severe impairment and cannot perform his past relevant work as a mechanic's helper. The ALJ concluded, however, that plaintiff has the residual functional capacity to perform light work and thus, by applying Table No. 2 of Ap-

pendix 2 of the Regulations promulgated pursuant to the Act, is not to be considered disabled. Plaintiff appealed and on June 3, 1983 the Appeals Council affirmed the decision of the ALJ.

## Discussion

■ In these proceedings, our function is limited to a review of the legal standards applied by the Secretary and a determination of whether the Secretary's findings of fact are supported by substantial evidence. *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). To determine whether there is substantial evidence to support the Secretary's findings, we must consider both evidence that supports and evidence that detracts from the Secretary's decision. The Secretary's findings will be sustained if supported by substantial factual evidence, despite the presence of substantial evidence to support plaintiff's position, and despite the fact that this Court's own independent analysis of the evidence might differ from the Secretary's. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Reading v. Mathews,* 542 F.2d 993, 997 (7th Cir. 1976). However, although we must give substantial deference to the Secretary's evidentiary findings, no such "presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982); *see Marcus v. Califano,* 615 F.2d 23, 28 (2d Cir.1980).

The regulations promulgated by the Secretary in accordance with the Act set forth a five step process for evaluating disability claims. 20 C.F.R. § 404.1520. This process has been interpreted as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

■ The Secretary correctly applied the first two steps of this five step evaluation process. There is no evidence in the record, however, that the ALJ considered the third factor, *i.e.,* whether plaintiff's impairment was one of those listed in Part A of Appendix 1, 20 C.F.R. Part 404, Subpart P. If plaintiff's impairment was in fact listed, he is considered "disabled per se" regardless of the findings with respect to the final two criteria. *Chico v. Schweiker,* 710 F.2d 947, 951 (2d Cir.1983).

■ Plaintiff claims that his condition met the requirements of § 1.05 C of Appendix 1 pertaining to disorders of the spine. The medical evidence submitted by plaintiff may not support this claim because there is no detailed description of orthopedic and neurologic examination findings as required by § 1.00 B of Appendix 1. We cannot be certain, however, that plaintiff's "chronic low back syndrome," as reported by Dr. Patel, could not be classified as one of the disorders listed in § 1.05 of Appendix 1. This is a determination that should have been made by the ALJ but it is clear from the record that he failed to consider this issue. Defendant has argued in its

brief that plaintiff does not have a listed impairment, inviting us to make this determination. This we decline to do.

Although if the ALJ concludes on remand that the claimant satisfies the third criteria, it will be unnecessary for him to go on to criteria four and five, *Chico, supra* at 951, in the interests of possibly expediting these proceedings, we believe it appropriate to address the ALJ's current determinations under steps four and five.

■ The ALJ addressed the fourth step of the evaluation process by expressly finding that plaintiff was unable to resume his past relevant work as a mechanic's helper in an iron works. The ALJ was then required to consider the final factor to be evaluated, whether there was other work which plaintiff could perform. The burden of proof as to this factor is on the Secretary. *Berry, supra* at 467.

The ALJ concluded that plaintiff had the residual functional capacity "for at least light work as defined in ·20 C.F.R. § 404.-1567(b)" and that this factor, when considered in conjunction with his age, education and prior job experience, meant that he was not disabled. Findings 6–10, Record 14. After reviewing the record and the applicable regulations, however, we are unable to conclude that the ALJ's finding that plaintiff could perform "light work" is supported by substantial evidence.

■ With respect to plaintiff's subjective complaints of pain,· the ALJ stated "there is no objective medical evidence of any condition that would produce constant, severe or intolerable pain ...." Record 13. It is true that under the Act, a claim of disability must be supported by objective medical evidence of a physical or mental impairment. 42 U.S.C. § 423(d) (1976). The ALJ, however, failed to properly apply this legal standard to the specific facts of this case. The ALJ may not disregard a claimant's subjective complaints of intense pain solely because objective medical findings only establish the existence of an impairment that usually does not cause such severe pain. *Marcus v. Califano,* 615 F.2d

23, 27 (2d Cir.1979); *Culver v. Califano,* 502 F.Supp. 661, 664 (W.D.N.Y.1980).

There can be no dispute in this case that plaintiff suffered pain resulting from a medically determinable physical impairment. Dr. Zaretsky, Dr. deNarvaez and even the disability determination service's consulting physician, Dr. Patel, all reported that plaintiff had a lower back impairment and complained of intense pain. The ALJ expressly found that plaintiff had "back aches." Record 14.

■ It is true that the ALJ is not obliged to accept a claimant's self-serving, subjective statements pertaining to his claim, and that such statements must be evaluated with due consideration for credibility, motivation and medical evidence of impairment.· *Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir.1975); *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir.1969). But to overcome a claimant's subjective complaints of pain and the· treating physicians' opinions as to the existence of a disability, the contrary evidence must be of a substantial nature. *Leftenant v. Schweiker,* 543 F.Supp. 989, 993–994 (S.D. N.Y.1982).

■ In this case, there is no such substantial contrary evidence. The ALJ stressed Dr. Soscia's initial estimate that plaintiff's disability would only last three to four weeks. Dr. Soscia, however, did not repeat this estimate when he examined plaintiff two weeks later. Record 103. The ALJ also pointed to the time gaps between the reports submitted by plaintiff's treating doctor, Dr. Zaretsky. These time gaps, however, do not support the ALJ's conclusion that plaintiff was only treated on an occasional, infrequent basis. Plaintiff and Dr. Zaretsky both stated that plaintiff was treated on a monthly basis from July 24, 1980 until at least October 13, 1982. Record 32, 94, 99. Finally, the ALJ ignored the general rule that while determinations of disability by other agencies are not conclusive in determining a claimant's disability under the Act, they are "entitled to some weight and they bolster [the claimant's] credibility." *Dunbar*

*v. Califano,* 454 F.Supp. 1261, 1267 (W.D. N.Y.1978); *see Cutler v. Weinberger,* 516 F.2d 1282, 1286 (2d Cir.1975).

 With respect to the evidence that allegedly shows plaintiff could perform "light work," such evidence is not of such magnitude as to contradict the evidence that plaintiff did not retain the capacity to perform any substantial gainful activity, let alone light work. The only evidence supporting the ALJ's conclusion that plaintiff could perform light work is Dr. Kovary's residual functional capacity report. The opinion of a nonexamining doctor, however, cannot serve as substantial evidence to support an ALJ's decision when the opinion is unsupported by objective medical facts, conflicts with the examining physicians' opinions, and is contrary to the claimant's uncontroverted subjective evidence. *Rosa v. Secretary of Health & Human Services,* 547 F.Supp. 712, 716 (D.Mass.1982); *Marbury v. Matthews,* 433 F.Supp. 1081, 1086 (W.D.N.Y.1977); *Ehrenreich v. Weinberger,* 397 F.Supp. 693, 696–698 (W.D.N.Y.1975). In this case, plaintiff's treating physician, Dr. Zaretsky, found that plaintiff was not capable of gainful employment. Furthermore, Dr. deNarvaez, who examined plaintiff for the Workmen's Compensation Board, found that he had a permanent partial disability. Plaintiff testified that he has trouble standing for very long, can walk 1-½ blocks without a rest, and can sit for twenty minutes. Finally, Dr. Kovary's report, especially the statement that plaintiff has 60° flexion of the back, is totally unsupported by the objective medical facts as reported by the treating physicians. Therefore, Dr. Kovary's report should have been discounted by the ALJ and cannot serve as substantial evidence to contradict the substantial evidence that plaintiff could not perform any gainful activity.

 Even assuming *arguendo* that Dr. Kovary's report was found to constitute substantial contradictory evidence, it *alone* would not support the ALJ's holding as to plaintiff's work capacity. For the purposes of the Act, a job is considered "light work" when it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.-1567(b). To be considered capable of performing light work, a claimant "must have the ability to do substantially all of these activities." *Id.* Dr. Kovary's report, however, is silent on the questions of plaintiff's ability to sit, stand, walk or complete push/pull activities. Therefore, since there is no evidence in the record that plaintiff's ability to perform these specific functions meets the requirements for light work, there is no evidence, let alone substantial evidence, to support the ALJ's finding on this issue.

It seems clear to us, therefore, that the ALJ's decision misapplies the proper legal standards and is not supported by substantial evidence. Accordingly, defendant's motion for judgment on the pleadings is denied and the case is remanded to the Secretary for further proceedings consistent with this Opinion.

SO ORDERED.